UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
BENZION LEBOVITS, as Trustee of
the Weberman Family Irrevocable Life
Insurance Trust,

                Plaintiff,         **MEMORANDUM AND ORDER**
                                           12-CV-6397 (FB) (RML)

    -against-

PHL VARIABLE INSURANCE
COMPANY,

                Defendant.
-------------------------------------------------x

*Appearances:*
For the Plaintiff:                                *For the Defendants:*
IRA S. LIPSIUS, ESQ.                        PATRICK J. FEELEY, ESQ.
DAVID BENHAIM, ESQ.                    ELIZABETH ROZON BAKSH, ESQ
ALEXANDER J. SPERBER, ESQ.         Dorsey & Whitney LLP
CHERYL D. LIPSIUS, ESQ.                51 West 52nd Street
Lipsius-Benhaim Law, LLP               New York, NY 10019
80-02 Kew Gardens Road, Suite 1030
Kew Gardens, NY 11415

**BLOCK, Senior District Judge:**

      Benzion Lebovits ("Lebovits"), as trustee of the Weberman Family Irrevocable Life Insurance Trust (the "Trust"), brings this action against PHL Variable Insurance Co. ("PHL") seeking a declaration that a life insurance policy held by the Trust did not lapse due to nonpayment of premiums. Jurisdiction is premised on diversity and the parties agree that New York law governs.

Lebovits now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the Court grants the motion.

I

The Trust is the owner and beneficiary of a four-million-dollar universal life insurance policy (the "Policy") issued by PHL on January 22, 2008. The Policy has an investment component in the form of an interest-bearing account. The owner is expected to maintain sufficient funds in the account to cover the Policy's premium, which is deducted on a specific date each month. If, on any monthly calculation date, the required deduction exceeds the net account value, the Policy goes into default. By law, the policyholder then has 61 days to cure the default. *See* N.Y. Ins. L. § 3203(a)(1).

The parties agree that the Policy "went into grace" on June 22, 2010. PHL then sent the Trust the following notice:

> Our records indicate that you did not make the scheduled premium payments on this premium certificate as you planned. The cash value of your certificate has been depleted, and is no longer sufficient to support the monthly charges and consequently the certificate entered its 61 day Grace period at that time.
>
> At a minimum, $72,078.72 must be received by us on or before 8/22/2010, in order to prevent a lapse.

ECF No. 55-5. PHL sent a second notice on July 22, 2010.

On August 20, 2010—two days before the lapse date—the Trust sent PHL a

check for $72,078.72. It was returned for insufficient funds. On August 24th— two days after the lapse date—PHL received a wire transfer in the amount of $75,150.00 from Khal Torath, a religious organization that had loaned Lebovits the necessary funds. Taking the position that the Policy had lapsed, PHL refused the payment.

PHL notified the Trust that the Policy has lapsed, but later offered to reinstate the Policy. The Trust did not respond.

## II

In his motion for summary judgment, Lebovits asserts that PHL's lapse notices are void because they incorrectly stated the amount due. For certain types of insurance, such an error does not void the notice. *See McMillan v. Farm Bur. Mut. Auto. Ins. Co.*, 126 N.Y.S.2d 436, 437 (3d Dep't 1953) ("The notice of cancellation [of an automobile liability policy] was effective, even though the amount which it specified, as the amount to be paid to nullify the cancellation, was in excess of the amount then due[.]"). But life insurances policies are subject to § 3211 of the New York Insurance law, which prohibits an insurer from lapsing such a policy less than one year from a default in payment unless it provides notice to the insured. *See id.* § 3211(a)(1). The notice required by the statute must "state the amount of such payment [due]." *Id.* § 3211(b)(2).

Although the statute does not explicitly state that the amount given in the notice must be correct, courts in states with similar provisions have read that requirement

3

into the statute. *See Turner v. OM Financial Life Ins. Co.*, 822 F. Supp. 2d 633, 637-38 (W.D. La. 2011); *Estate of Blakely v. Federal Kemper Life Assurance Co.*, 640 N.E.2d 961, 969 (Ill. App. Ct. 1994). The only exception is if the discrepancy is a "harmless typographical error." *Swayze v. Mutual Life Ins. Co.*, 32 F.2d 784, 787 (D. Kan. 1929). Drawing on this case law, a justice of the New York Supreme Court, Kings County, held that when "the premium amount listed as due in the notice is significantly higher than the amount actually required, . . . such a notice would not be effective to cancel the policy." *Zeligfeld v. Phoenix Life Ins. Co.*, 2013 WL 1688902, at *6 (N.Y. Sup. Ct. Apr. 17, 2013). That same justice reaffirmed his holding in *Blumenberg v. Aviva Life & Annuity Co.*, 2013 5496144 (N.Y. Sup. Ct. Oct. 1, 2013).

*Zeligfeld* and *Blumenberg* appear to be the only New York cases addressing the issue, which means the Court's task is to predict whether the New York Court of Appeals would accept or reject their conclusion. *See Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994) ("Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity."). While the Court cannot say that the New York Court of Appeals would fully embrace *Zeligfeld*'s "significantly higher" standard, it at least agrees that the state's highest court would invalidate a notice that misstated the premium due, as long as the misstatement was not de minimis.

Thus, if PHL's notices correctly stated the premium due, it was entitled to lapse the Policy on August 22, 2010. If, on the other hand, the premium due was incorrect, then the Policy did not lapse. Although noncompliance with § 3211 means that an insurer cannot lapse the policy within one year of the default, it may still lapse the policy after that period. *See Brown v. Travelers Ins. Co.*, 288 N.Y.S. 822, 825 (N.Y. City Ct. 1935) ("[The predecessor to § 3211] is operative only to prevent forfeiture without notice within the period of one year from the occurrence of the default, not after the expiration of such period."). However, since Lebovits tendered more than the amount stated in the notice well within one year of his June 22, 2010 default, PHL was not entitled to lapse the policy on that basis.

Thus, only one question remains: Did PHL's notices accurately state the amount due? According the PHL, the amount stated was calculated as the difference between the monthly deduction and the net account value on June 22nd, *plus* three monthly deductions. It insists that this was a correct calculation under the Policy.

The Policy defines the amount necessary to cure a default as an amount "sufficient to increase the Net Account Value on that Monthly Calculation Date to cover three Monthly Deductions." ECF No. 55-4, § 11. It is possible to read that language to mean that the insured must pay three months' worth of premiums *plus* the shortfall that caused the default—in effect, a fourth monthly premium (or portion thereof). But it is also possible to read the language to mean that the amount due is

three monthly premiums, with the shortfall included in that amount. "Any ambiguity, however, must be construed against the insurer as the drafter of the policy." *NIACC, LLC v. Greenwich Ins. Co.*, 857 N.Y.S.2d 723, 724 (2d Dep't 2008) (citing *Guardian Life Ins. Co. v. Schaefer*, 70 N.Y.2d 888, 890 (1987)).

At oral argument, PHL's counsel conceded the ambiguity, but argued that it should be resolved by considering extrinsic evidence. It is true that "[i]f there is an ambiguity in an insurance policy, the parties to the policy may, as an aid in construction, submit extrinsic evidence of their intent at the time of contracting." *Superior Ice Rink, Inc. v. Nescon Contracting Corp.*, 861 N.Y.S.2d 362, 365 (2d Dep't 2008). As Lebovits's counsel pointed out, however, the extrinsic evidence on which PHL concerns its unilateral intent and industry practice, not the parties' mutual understanding when the Policy was drafted. *Cf. Messina v. Lufthansa German Airlines*, 47 N.Y.2d 111, 115 (1970) ("[S]o far as we are told the opposing [interpretations] now advanced were neither discussed nor given any thought during the collective bargaining process."). In the absence of any relevant extrinsic evidence, the rule of construction governs. *See Superior Ice Rink*, 861 N.Y.S.2d at 691-92.

Moreover, Lebovits's reading brings the Policy more closely in line with § 3203 of the New York Insurance Law, which defines the amount due as "sufficient premium to keep the policy in force *for three months from the date the insufficiency was determined.*" *Id.* § 3203(a)(1) (emphasis added). Although PHL argues that

6

§ 3203 does not create a private right of action, there is no dispute that the statute's requirements are deemed incorporated into the Policy. *See Terry v. UNUM Life Ins. Co.*, 394 F.3d 108, 109 (2d Cir. 2005) ("[W]here a policy provision is less favorable to the insured than the provision required by New York Insurance Law, the statutory provision controls.").

PHL argues that, even if its premium calculation was not correct, Lebovits was not prejudiced by the error. But the cases it cites for the proposition that errors in a lapse notice are excused unless prejudicial are inapposite. In *Loss v. Mutual Life Insurance Co.*, 230 F. Supp. 329 (S.D.N.Y. 1963), the insurer "made mathematical errors in the first instance and twice changed the figure which it told the insured he would need to contribute," but it did not lapse the policy for more than 31 days (the then-applicable grace period) after it had "advised the insured of the correct figure." *Id.* at 335. *Nederland Life Insurance Co. v. Meinart*, 199 U.S. 171 (1905), did not involve an incorrectly calculated premium, but rather extraneous language in the notice. The Supreme Court sensibly held that "when the assured receives the very notice required by the statute, its purpose is fulfilled, although the notice contains in another respect . . . a mistake." *Id.* at 179.

Because PHL's notices did not correctly state the amount due, it was not entitled to lapse the policy on August 22, 2010. Nearly six years have passed since then, however, and Lebovits is not entitled to coverage during that period free of

charge. Rather, he must show that he is ready and able to bring the Policy's premiums up to date before the Court can declare that it remains in effect. *See Berkshire Settlements, Inc. v. Ashkenazi*, 2011 WL 5974633, at *7 (E.D.N.Y. Nov 29, 2011); *cf. Huntington Mining Holdings, Inc. v. Cottontail Plaza, Inc.*, 60 N.Y.2d 997, 998 (1983) (plaintiff has an "obligation to show that it was ready and able to perform its own contractual undertakings . . . in order to secure specific performance").

## III

Lebovits's motion for summary judgment is granted. The parties shall make a good-faith effort to negotiate the premium required to bring the Policy up to date. Within thirty days of this memorandum and order, they shall inform the Court of the amount, failing which the Court will schedule an evidentiary hearing to determine it. Entry of judgment declaring the Policy in full force in effect will be held in abeyance pending resolution of that issue.

**SO ORDERED.**

/Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 9, 2016